**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PATRICIA I. ERUTEYA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04 C 1482 |
| v. | ) | |
| CITY OF CHICAGO, | ) | HONORABLE DAVID H. COAR |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before this Court is the City of Chicago's ("City" or "Defendant") motion to dismiss portions of Patricia Eruteya's ("Plaintiff" or "Eruteya") Second Amended Complaint. For the reasons set forth below, Defendant's partial motion to dismiss is GRANTED in part and DENIED in part. Defendant's motion to dismiss Count V of Plaintiff's Second Amended Complaint is GRANTED. All other requested grounds for relief are DENIED.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Eruteya, a black woman of Nigerian descent, has been employed with the City's Water Department since July 27, 1987, as a microbiologist. (Second Am. Compl., ¶¶ 4, 6). Plaintiff currently holds the position of Microbiologist IV. (Id. at ¶ 6). Eruteya alleges, that at all relevant time periods, she satisfactorily performed her job duties. (Id. at ¶ 7).

-1-

In her Second Amended Complaint, Eruteya alleges, from February 1999 to the present, the City of Chicago has operated under a policy and practice that discriminates against her due to her national origin (Nigerian) and race (black). ( Second Am. Compl., ¶ 8). Additionally, Eruteya alleges that Defendant, through its agents, subject her to a hostile work environment because of her race and national origin. Plaintiff lists specific incidents of discrimination and harassment that she alleges are sanctioned and/or condoned by the City of Chicago.

First, Eruteya alleges that subordinate employees continually taunt, frustrate and humiliate her by making racial comments, in an attempt to force Plaintiff to quit her job. (Second Am. Compl., ¶ 9). Specially, Eruteya claims that her subordinates make gestures and facial expressions that imply that Plaintiff, as a black woman, cannot be their supervisor. Id. In addition, Plaintiff contends that subordinate employees refuse to take direction from her, and constantly make implications that because she is black, she does not belong in her department. Id.

Second, Eruteya alleges that subordinate employees threatened her by pouring harmful chemicals and/or biological agents at her work station, thereby endangering her health and well being. (Second Am. Compl., ¶ 9). Third, Plaintiff contends that her subordinates and supervisors accused her of stealing on several occasions. Id.

Fourth, Eruteya claims that employees have referred to her as "trash". In addition, Plaintiff asserts that employees inscribed her name on a janitorial bucket/wringer used to mop the office floor. (Second Am. Compl., ¶ 9). Fifth, Plaintiff contends that superior officers within her department encourage Plaintiff's subordinates to refuse to take work from her. Id.

Sixth, Eruteya alleges that employees made false charges that she attended a bio-terrorism conference with the intent to harm or kill her co-workers because of the harassment that they

subjected her to. (Second Am. Compl., ¶ 9). Seventh, Plaintiff claims that some her supervisors encouraged Plaintiff's subordinates to make unfounded complaints against her, and these supervisors commenced internal disciplinary hearing proceedings against her on the charges. (Id).

Eighth, Plaintiff states that the City tolerated a work environment that was pervasively hostile to many blacks, including Eruteya. (Id). Ninth, Plaintiff asserts that Defendant ignored the harassment that Plaintiff faced, and failed to take any action when Plaintiff complained about the harassment, and requested that it stop. (Id.). Further, Eruteya asserts that each time she complained about the harassment, the incidents would escalate. (Second Am. Compl., ¶ 10). In addition, Plaintiff contends that after she filed charges of discrimination with the EEOC, the City of Chicago retaliated against her by denying her an interview for a promotion, and a promotion. (Second Am. Compl., ¶ 14). As a result of the aforementioned incidents, Plaintiff alleges that she suffered severe emotional and psychological harm. (Second Am. Compl., ¶ 12).

Subsequently, Eruteya filed a charge of discrimination against the City with the Equal Employment Opportunity Commission ("EEOC"), and the Illinois Department of Human Rights ("IDHR"). (Second Am. Compl., ¶ 11). On December 2, 2003, Eruteya received a Notice of Right to Sue Letter from the EEOC. (Id.). Eruteya filed her original Complaint with this Court on February 25, 2004, her First Amended Complaint on July 15, 2004, and her Second Amended Complaint, which is presently before the Court, on August 31, 2004.

Plaintiff's five count, Second Amended Complaint, seeks relief for the alleged incidents of national origin and race discrimination. In Count I, Plaintiff alleges national origin and race discrimination, pursuant to Title VII, 42 U.S.C. § 2000e *et seq*. Count II of Plaintiff's Second

Amended Complaint alleges retaliation pursuant to Title VII, 42 U.S.C. § 2000e *et seq*. Count III alleges race discrimination, harassment and retaliation pursuant to 42 U.S.C. § 1983 and pursuant to 42 U.S.C. § 1981. Count IV of Eruteya's Second Amended Complaint brings an Equal Pay Act claim, pursuant to 29 U.S.C. § 206(d).[1] Count V of Eruteya's Second Amended Complaint brings a state law claim for intentional infliction of emotional distress.

**II. LEGAL STANDARD FOR A MOTION TO DISMISS**

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "must accept all well pleaded allegations as true. In addition, the Court must view these allegations in the light most favorable to the plaintiff." Gomez v. Illinois State Board of Education, 811 F.2d 1030, 1039 (7th Cir. 1987). A party's claim should only be dismissed if it is clear that no set of facts in support of the claim would entitle the party to relief. Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997) (quoting Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)).

**III. ANALYSIS**

Defendant's partial motion to dismiss contends that Plaintiff's: (1) allegation of failure to promote is beyond the scope of the charge she filed with the EEOC; (2) claims prior to August

---

[1] In this Count of her Second Amended Complaint, Eruteya alleges that at various times during the course of her employment, she performed at a skill level equal to that of certain male employees. However, those male employees were compensated with a higher salary than the Plaintiff's.

28, 2001 are time-barred; (3) complaint fails to state a claim for intentional infliction of emotional distress. Each of these arguments will be addressed in turn.

*A. Are Plaintiff's Allegations of Failure to Promote Beyond the Scope of Her EEOC Charge?*

As previously noted, in Count II of her Second Amended Complaint, Eruteya contends that after she filed her EEOC charge, Defendant retaliated against her by denying her an interview for a promotion, and a subsequent promotion. Defendant contends that Plaintiff's failure to promote claim should be dismissed because Eruteya did not allege the City's failure to promote as the basis of her EEOC charge. The City notes that the EEOC charge includes no mention of failure to promote in retaliation for Plaintiff's filing of an EEOC charge. Consequently, Defendant contends, because the failure to promote allegation is outside of the scope of the EEOC charge, that claim must be dismissed.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." Cheek v. Western & Southern Life Insurance Company, 31 F.3d 497, 500 (7th Cir. 1992) (citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974)). There are two reasons for this general rule. First, this rule encourages plaintiffs to fully develop their claims before resorting to courts, and thus serves the goal of promoting early resolution of the dispute by settlement or conciliation. McKenzie v. Illinois Dept. of Transportation, 92 F.3d 473, 481 (7th Cir. 1996). Second, the rule ensures that the employer sued under Title VII receives adequate notice of the charges against it. Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir. 1992).

If a Plaintiff wishes to include a discrimination claim in her complaint that was not brought in her EEOC charge, she must pass the two-prong test that the Seventh Circuit established in Jenkins v. Blue Cross Mut. Hosp. Ins., Inc., 538 F.2d 164 (7th Cir. 1976). Pursuant to Jenkins, a Plaintiff must show: (1) the claim is like or reasonably related to the EEOC charges, and (2) the claim in the complaint reasonably could develop from the EEOC investigation into the original charges. Id. at 167. Consequently, the complaint must be "like or reasonably related to the allegations" of the underlying EEOC charge or "grow out of" those allegations." Harper v. Godfrey Co., 45 F.3d 143, 148 (7th Cir. 1995).

In her EEOC charge, Plaintiff states that her cause of discrimination is based upon race and national origin discrimination, and retaliation. (See Second Am. Compl., Ex. 1). Under Section II .B.3 of her EEOC charge, Eruteya describes the alleged retaliation she encountered when she complained of her co-worker's discriminatory acts. Plaintiff states: "Respondent has harassed me since I opposed unlawful discrimination, thereby, raising an inference of unlawful discrimination." Second Am. Compl., Ex. 1.

Plaintiff's Second Amended Complaint describes two types of retaliation. In Count I, ¶ 10 of Plaintiff's Second Amended Complaint, she alleges that Defendant retaliated against her when she complained about incidents of discrimination internally. Specially, Eruteya states: "Efforts plaintiff made to seek redress by bringing these matters to defendant's attention were largely ignored, and the hostile work environment continued not only unabated but escalating each time plaintiff reported incidents."[2] In Count II of her Second Amended Complaint, which

---

[2] Although Eruteya does not allege retaliation in Count I of her Second Amended Complaint, the allegations in Count I, ¶ 10 stem from Section II.B.3 of Plaintiff's EEOC charge, where she alleges that the harassment escalated when she complained of discrimination

alleges unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, Eruteya claims that after she filed her charges of discrimination with the EEOC, the City retaliated against her. Plaintiff alleges that she was denied an interview for a promotion, and a promotion. In addition, in Count III of her complaint, Eruteya alleges race discrimination, harassment and retaliation pursuant to 42 U.S.C. §§ 1981 and 1983.

Consequently, there are two separate types of retaliation that Plaintiff alleges occurred. Although specific dates are not mentioned, the retaliation that Eruteya describes in Count I occurred prior to her filing her EEOC charge. However, the retaliation that Plaintiff describes in Count II was subsequent to the filing or her EEOC charge. Therefore, this is the type of claim that "grew out of the EEOC charge." Further, the Seventh Circuit has held that a plaintiff is allowed to bring a retaliation claim, even if that claim is not included in the EEOC charge, if the plaintiff alleges that the retaliation occurred *after* the filing of the EEOC charge. See Steffen v. Meridian Life Ins. Co., 859 F.2d 534, 545, n.2 (7th Cir. 1988); see also McKenzie v. Illinois Dept. of Transportation, 92 F.3d 473, 482-83. This is because "a double filing. . .would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII." Steffen v. Meridian Life Ins. Co., 859 F.2d 534, 545, n. 2 (quoting Gupta v. East Texas State University, 654 F.2d 411, 414 (5th Cir. 1981)). The retaliation claim

---

internally. Unquestionably, there are some factual distinctions between the EEOC Charge and Count II of the Second Amended Complaint. Also, Plaintiff does not use the word "retaliation" in Count I of her Second Amended Complaint. However, the Seventh Circuit has recognized, "that the original charge is often completed by laypersons rather than lawyers. . .and 'a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint.' " McKenzie v. Illinois Dept. of Transp., 92 F.3d 473, 482 (7th Cir. 1996 (quoting Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 501 (7th Cir. 1994)).

that Defendant moves to dismiss is exactly the type of retaliation that occurs after a Plaintiff files her EEOC charge. Consequently, it was reasonable that the Plaintiff would not raise this claim until after she filed her EEOC charge.

In addition, Defendant notes that the allegations in Eruteya's EEOC charge are that the discriminatory conduct began in December 2001, while her Second Amended Complaint indicates that the discriminatory conduct began in February 1999. Further, the City notes, that one consideration by courts in determining whether a plaintiff's claims are sufficiently connected to her EEOC charge is whether the complaint and the EEOC charge cover the same time period. See Cheek v. Peabody Coal Co., 97 F.3d 200, 203 (7th Cir. 1996). However, the inconsistency of dates between Eruteya's EEOC charge and complaint has no bearing on her failure to promote allegations. Plaintiff alleges that as a result of filing her EEOC charge, she was denied an interview for a promotion, and a promotion. Consequently, this retaliation must have occurred after June 24, 2002, the date Plaintiff filed her EEOC charge. As such, the inconsistency of dates is irrelevant to Eruteya's failure to promote claim. Defendant's motion to dismiss Eruteya's failure to promote claim is denied.

### B. Are Plaintiff's Claims Filed Prior to August 28, 2001 Time-Barred?

Pursuant to 42 U.S.C. §2000e-5(e), a plaintiff is required to file a charge of discrimination within 300 days of the alleged discriminatory action. See EEOC v. Harvey L. Warner and Associates, 91 F.3d 963, 968 (7th Cir. 1996). The 300-day limit begins to run when the defendant has taken the action that injures the plaintiff, and when the plaintiff knows she has been injured. Sharp v. United Airlines, 236 F.3d 368, 372 (7th Cir. 2001). Defendant notes that Plaintiff filed her EEOC charge on June 24, 2002, and as a consequence, Defendant contends,

any alleged acts prior to August 28, 2001 are untimely. Alternatively, Eruteya contends that any alleged discriminatory events occurring prior to August 28, 2001 should not be dismissed automatically, as they may constitute relevant background evidence as to her timely claims.

The Supreme Court's decision in National Railroad Passenger Corp. Morgan, 536 U.S. 101 (2002), provides a guideline for determining whether the allegations in a Plaintiff's EEOC charge are timely. In Morgan, the Supreme Court held that a plaintiff must file a charge for discrete acts of discrimination (such as termination, failure to promote, denial or transfer) within 300 days of the act or "lose the ability to recover for it." Id. at 110.

However, because hostile environment claims, "are based on the cumulative effect of individual acts" (Id. at 115), the Court held that incidents constituting a hostile work environment are part of one unlawful employment practice, and the employer may be liable for all acts that are part of the single claim. Id. at 118. Thus, the employee need only file a charge within 300 days of any act that is part of the hostile environment. Id. This is a "continuing violation." "A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period." Dasgupta v. University of Wisconsin Board of Regents, 121 F.3d 1138, 1139 (7th Cir. 1997).

However, if acts occurred outside the limitations period, they still must have some connection to the events that occurred within the limitations period. Id. at 118 ("Intervening actions" may make incidents outside the period no longer part of the same hostile environment claim. Id.). Further, a significant gap between the acts within the limitations period and those outside of it may be a bar to the Plaintiff's ability to rely upon those acts outside of the

limitations period. See Garrison v. Burke, 165 F.3d 565, 570 (7th Cir. 1999) (an attack that took place outside of the limitations period did not "reinforce" acts within period because of a two-year gap between them. Id.).

At this stage of the parties' proceedings, where all facts must be construed in the light most favorable to the Plaintiff, the Court will not dismiss all acts of discrimination prior to August 28, 2001. Allegations of discrimination prior to August 28, 2001 may constitute relevant background evidence to claims that occurred August 28, 2001 or later. In addition, it may not have become clear that the acts prior to August 28, 2001 were unlawful harassment until those acts were repeated in the limitations period. It is undisputed that Eruteya brought her suit while at least some of the alleged violations were still within the 300-day limitation period. Consequently, because Plaintiff's claims prior to August 28, 2001 may be part of a continuing violation theory, Defendant's motion to dismiss those claims is denied.

*C. Can Eruteya Properly Bring An Intentional Infliction of Emotional Distress Claim?*

The City contends that Eruteya's intentional infliction of emotional distress ("IIED") claim should be dismissed. Defendant makes three arguments in support of this contention. First, Defendant asserts that Plaintiff has not alleged that Defendant has intentionally caused the alleged acts that comprise her IIED claim, nor has she alleged that the acts were willful and wanton. Second, the City of Chicago asserts that even if Eruteya properly alleges an IIED claim, the Local Government Tort Immunity Act ("Tort Immunity Act") immunizes the City from Plaintiff's IIED claim. Third, Defendant believes that Eruteya's IIED claim is preempted by

Title VII and the Illinois Human Rights Act ("IHRA"). Each of the City's three grounds for dismissal will be addressed in turn.

*1. Does Plaintiff Properly State a Claim For Intentional Infliction of Emotional Distress?*

The City notes that Plaintiff's IIED claim states that the Defendant, either through intent or negligence, caused Eruteya emotional distress as a direct and proximate result of its discriminatory conduct. (See Second Am. Compl., ¶ 29). As an initial matter, Defendant notes that in order to have a viable IIED claim, a plaintiff must allege that the defendant either intended that its conduct inflict severe emotional distress or know that there was a high probability that the conduct would cause severe emotional distress. See Harriston v. Chicago Tribune Co., 992 F.2d 697, 702 (7th Cir. 1993). Defendant contends that Plaintiff did not plead in her complaint any allegation that the alleged harassment that she suffered was either specifically intended by the City or that the City knew that the conduct had a high probability of causing emotional distress. Therefore, Defendant urges, because Eruteya does not allege the requisite standard of intent, her claim should be dismissed.

In addition, the City notes the legal standard for an IIED claim. Under Illinois law, in order to properly state a claim for IIED, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or was aware that there was a high probability that its conduct would do so; and (3) the defendant's conduct did in fact cause severe emotional distress. McGrath v. Fahey, 533 N.E. 2d 806, 809 (Ill. 1988) (internal citations omitted). "The law intervenes only where the distress inflicted is so severe no reasonable man could be expected to endure it." Id. Allegations of mere insults,

indignities, threats, annoyances, or petty oppression are insufficient. <u>Lundy v. City of Calumet City</u>, 567 N.E.2d 1101,1103 (Ill. App. Ct. 1991). Defendant asserts that pursuant to this standard, Eruteya fails to state a claim upon which relief can be granted.

Defendant is correct that Eruteya cannot allege that the City negligently inflicted emotional distress. However, the portion of Count V of Eruteya's Second Amended Complaint which alleges that the City intentionally inflicted severe emotional distress upon her does state a claim upon which relief can be granted. Specifically, one of Eruteya's discrimination allegations is that the City sanctioned and/or condoned the conduct of employees who poured harmful chemicals and/or biological agents at her work area. This goes beyond mere insults, indignities, threats, annoyances, or petty oppression. On its face, this allegation in Plaintiff's complaint states facts sufficiently extreme and outrageous, and consequently, Plaintiff's state law claim of intentional infliction of emotional distress states a claim upon which relief can be granted. Whether they could survive after discovery is another matter.

*2. Is The City Immune From Liability For Plaintiff's IIED Claim?*

The City contends that even if Eruteya's IIED claim is actionable, the City is immune from liability, pursuant to the Tort Immunity Act. Section 2-201 of the Tort Immunity Act provides:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/2-201. In addition, the City asserts that because governmental employees are immune under Section 2-201, it is also immune pursuant to Section 2-109 of the Act, which provides: "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. Finally, Defendant contends that even if the conduct of its employees was willful and wanton, the City cannot be held liable, because the Tort Immunity Act makes no exceptions for willful and wanton behavior. See In re Chicago Flood Litigation, 680 N.E.2d 265, 273 (Ill. App. Ct. 1997).

Although a city and its employees generally receive immunity for its acts of policy or discretion, the claims that comprise Eruteya's intentional infliction of emotional distress claim, as alleged, go beyond the determination of policy or the exercise of discretion. It is improbable to think that an allegation that employees poured harmful chemicals and/or biological agents at Plaintiff's work area would be within the discretion or policymaking function (or the willful and wanton abuse of that discretion or policymaking function) of any City employee. See Tragas v. City of Chicago, No. 97 C 8303, 1998 U.S. Dist. LEXIS 16878 at * 16 (N.D. Ill. 1998) (finding that verbal harassment of an employee concerning aspects of that employee's life unrelated to his job clearly not related to any discretion of office or any determination of policy). Consequently, the allegations, as alleged in Eruteya's Second Amended Complaint, do not provide the City with immunity from Plaintiff's intentional infliction of emotional distress claim.

### 3. Does the Illinois Human Rights Act Preempt Eruteya's Claims?

The City notes that the Illinois Human Rights Act ("IHRA") provides that,"[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an

alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(C). Defendant asserts that when an IIED claim is supported by the identical factual allegations as a plaintiff's Title VII claim, that IIED claim is preempted. See Jansen v. Packaging Corp. of Am., 123 F.3d 490, 493 (7th Cir. 1997). Consequently, the City contends, because Eruteya's emotional distress claim is based on the same alleged conduct that underlies her Title VII race and national origin discrimination claims, the Court lacks jurisdiction over Plaintiff's IIED claim, and it should be dismissed.

In Geise v. Phoenix Co. of Chicago, 639 N.E.2d 1273, 1277 (Ill. 1994), the Illinois Supreme Court held that where a tort claim is "inextricably linked" to a claim of discrimination, such that there is "no independent basis for imposing liability," that claim is preempted by the Illinois Human Rights Act. In a subsequent decision, Maksimovic v. Tsogalis, 687 N.E. 2d 21 (Ill. 1997), the Illinois Supreme Court clarified the holding of Geise, and held that Geise does not preclude a court from exercising jurisdiction over all tort claims related to an alleged civil rights violation. Maksimovic, 687 N.E.2d at 23. Rather, the court must address whether those subsequent tort claims are "inextricably linked to a civil rights violation such that there is no independent basis for the actions apart from the Act itself." Id. See also Quantock v. Shared Marketing Services, Inc., 312 F.3d 899, 905 (7th Cir. 2002) (affirming dismissal of plaintiff's intentional infliction of emotional distress claim when supported by factual allegations identical to her Title VII sexual harassment claim).

Eruteya's IIED claim brings no independent tort or claim for relief, apart from her allegations of race and national origin discrimination. As such, there is no independent ground for relief. Consequently, Eruteya's intentional infliction of emotional distress claim is preempted

by the IHRA, and the Court lacks jurisdiction over Plaintiff's IIED claim. Therefore, Defendant's motion to dismiss Count V of Plaintiff's Second Amended Complaint is granted.

## IV. CONCLUSION

For the foregoing reasons, Defendant's partial motion to dismiss is GRANTED in part and DENIED in part. Defendant's motion to dismiss Count V of Plaintiff's Second Amended Complaint is GRANTED. All other requested grounds for relief are DENIED.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **March 9, 2005**