IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICIA I. ERUTEYA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.  04 C 1482 |
| v. ) | |
| CITY OF CHICAGO, ) | HONORABLE DAVID H. COAR |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION AND ORDER

Patricia I. Eruteya ("Plaintiff") is suing her employer, the City of Chicago ("Defendant" or "the City"), for violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; 42 U.S.C. § 1983; 42 U.S.C. § 1981; and the Equal Pay Act, 29 U.S.C. 206(d)(1).  Before this court is Defendant's motion for summary judgment, to which Plaintiff did not respond.  For the following reasons, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Defendant's motion is granted as to the disparate treatment claim in Count I, and to Counts II, III, and IV in their entirety.  Defendant's motion is denied as to the hostile work environment claim in Count I.

I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003).

The movant bears the burden of establishing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. To successfully oppose the motion, the non-movant must designate these facts in affidavits, depositions, answers to interrogatories, or admissions; the non-movant cannot rest on the pleadings alone. Celotex, 477 U.S. at 324. Under the Local Rules, the non-movant must file the opposing affidavits and other materials described above, a memorandum of law in opposition to the motion, and a concise statement responding to each of the movant's facts and alerting the Court to additional material facts. See Local Rule 56.1(b).

Where, as here, the non-movant fails to respond to the motion for summary judgment, the movant's version of the facts are deemed admitted. See Local Rule 56.1(b)(3)(B); Smith v. Lanz, 321 F.3d 680, 683 (7th Cir. 2003) ("[A] failure to respond by the nonmovant as mandated by the local rules results in an admission."). Summary judgment then will be entered in the movant's favor *if*, using the standard outlined above, such a ruling is appropriate. See Fed. R.

Civ. P. 56(e) ("If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party").

## II.  FACTS

Because Plaintiff failed to respond to Defendant's motion for summary judgment, as indicated above, all of the following material facts are taken from Defendant's Local Rule 56.1(a)(3) statement.

Plaintiff is employed in the position of Microbiologist IV in the City's Department of Water Management ("the Department"). She was hired in 1987, promoted once, and promoted again to her current position in 1998. She has been the only employee in her current position since 1998. Her duties include analyzing drinking water for bacteria, completing and checking monthly reports of water testing results, and training entry-level microbiologists. Defendant is a municipal corporation organized and existing under the laws of the State of Illinois.

Plaintiff claims that the City has operated under a policy and practice of relegating her to second class citizenship, discriminating against her, and harassing her because of her race (black) and national original (Nigerian). Plaintiff believes the Department's supervisors, Krystyna Markiewicz, Ellen Flanagan, Charles Bowling, Lorenzo Sanchez, and Commissioner Richard Rice are the former and current policymakers who created this policy. These and the specific allegations detailed below were initially raised in Plaintiff's five-count, Second Amended Complaint. It alleges national origin and race discrimination pursuant to Title VII; retaliation pursuant to Title VII; race discrimination, harassment and retaliation pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1981; and violation of the Equal Pay Act. On March 9, 2005, this

Court dismissed the Complaint's fifth count, which alleged intentional infliction of emotional distress under state law.

### A. Toxic Chemical Dumping

Plaintiff claims that, as part of her treatment as a second class citizen, other employees are threatening her life by dumping chemicals and biological agents on her work area. While Plaintiff has not observed anyone placing chemicals at her work area, found physical evidence of such chemicals, or had her clothing or other items tested for chemicals, she claims that a person in the Chemistry Department (where all employees must work with toxic chemicals) named Saddique Ibudraac is mixing the offending chemicals. She knew such chemicals were present when she experienced burns and a burning sensation in September of 2001.

On January 8, 2002, Plaintiff sought treatment from Dr. Richard Gaskill ("Dr. Gaskill"). Though plaintiff complained during her initial visit that she was absorbing toxic chemicals, Dr. Gaskill did not find that she presented symptoms of toxic exposure. He ordered laboratory tests (including a creatine kinase, lead, and thyroid test) but was unable to conclude from the results that Plaintiff was exposed to toxic chemicals or had any elevated levels that would tend to be symptomatic of toxic exposure.

On January 27, 2002, Plaintiff complained to Dr. Gaskill about symptoms of a burning rash caused by chemical exposure at work. After examining Plaintiff the next day, Dr. Gaskill told her that he did not observe any rashes or symptoms of toxic exposure. Plaintiff does not believe the findings contained in the medical record of that examination.

## B. Racial Comments and Gestures

Plaintiff claims that white, subordinate employees have made racial comments and gestures to taunt and frustrate Plaintiff. She claims that other blacks have experienced specific instances of discrimination as well. According to Plaintiff, for example, microbiologist Sharon Cisneros told Plaintiff that "some people want to belong, but they can never belong" and that blacks should not go beyond high school. On another occasion, Sharon Cisneros allegedly made a hand gesture to indicate that Plaintiff was crazy. Plaintiff claims that another microbiologist, Mark Cloherty, said to Plaintiff, "why don't you go to Nigeria where you belong? Pretty soon you Nigerians will take all over the place." Plaintiff did not complain to anyone about these comments.

## C. Other Incidents of Discrimination and Harassment

Plaintiff alleges that when an employee lost an Atlas of Microbiology in 1999, her supervisor Charles Bowling accused her of stealing one from the workplace. Plaintiff ultimately produced a receipt to show that she had purchased her copy of the atlas and wrote a complaint to the Commissioner. No further action was taken.

Plaintiff claims that her name was written graffiti-style on a mop bucket near her desk that she uses when cleaning her work area. Plaintiff never observed anyone write her name on the bucket. Plaintiff also alleges that Sharon Cisneros and Andreas Chidichimo referred to her as "trash" during 2000 and 2001. She did not complain to anyone about this behavior. Plaintiff asserts that Harold O'Connor and Krystyna Markiewicz told others in her presence that she attended a bio-terrorism conference with the intent to harm or kill co-workers.

Plaintiff claims that supervisors encourage unfounded complaints by subordinates and then set up internal disciplinary proceedings on the charges. An example involved an employee, Therese Markham, who filed "violence in the workplace" incident reports against Plaintiff, including one in January of 2002. A hearing was conducted in February of 2002, and the report against Plaintiff was ultimately dismissed.

Plaintiff asserts that Sharon Cisneros, Andreas Chidichimo, and Charles Bowling loaded a "crying baby" program onto her work computer as racially-motivated harassment. When the computer started, Plaintiff testified, a baby appeared on the screen crying and whining to suggest that Plaintiff also cries and whines.

### D. Retaliation and Denial of Promotion

Plaintiff asserts that black employees do not receive equal treatment with white employees in terms of promotion and job operation. She specifically alleges that she was not interviewed for the position of Director of Water Purification Laboratories in September of 2003 in retaliation for filing an EEOC charge of discrimination in June of 2002. Plaintiff, who was aware of the application procedure, submitted her application and resume for the position in September of 2003 after finding out that interviews were being conducted.

As is the common practice, however, only candidates whose names were on the "referral list" were interviewed for the position. The referral list is compiled by the City's Department of Personnel ("DOP") and consists of qualified applicants who have current applications on file with the DOP for the open position. Plaintiff's name was not on the referral list generated by the DOP and forwarded to the Department of Water Management on July 31, 2003. In fact, the DOP

received her application on September 4, 2003, long after the referral list had been generated and forwarded. Plaintiff's name was not on the referral list because she previously submitted an application for the position in March of 1998 but, upon screening by DOP, was found "not qualified" for the position. On September 9, 2003, the Department of Water Commissioner, who makes the ultimate decisions to hire and promote, selected Alan Stark to fill the position.

### E. Wage Discrimination

Plaintiff's final claim is that her wages are not equal to that of her male counterparts. She asserts that although she performed work equal to Charles Bowling and Alan Stark in skill, effort, and responsibility, the two men were paid more from 1998 until 2003. However, Plaintiff also states that, from 1998 until the present, Charles Bowling has held a position (Chief Microbiologist) superior to hers in title and responsibility, and she and Alan Stark have not had the same duties. She is not aware of either man's salary information.

## III. DISCUSSION

Defendant moves for summary judgment in its favor because, it argues, Plaintiff cannot make out a prima facie case of disparate treatment, hostile work environment, or retaliation; she cannot demonstrate pretext as required by Title VII; she cannot show municipal liability or an intent by the City to discriminate against her, as required by Sections 1981 and 1983; and she cannot make out a prima facie case under the Equal Pay Act.

A.     **Race and National Origin Discrimination**

1.     **Disparate Treatment**

Plaintiff alleges that the City intentionally discriminated against her on the basis of race and national origin in violation of Title VII.[1]  Plaintiff can create a triable issue of fact as to the alleged discrimination by pointing to direct or circumstantial evidence of Defendant's discriminatory motive (the direct method), or by establishing a prima facie case under McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973) (the indirect, burden-shifting method).  See Rudin v. Lincoln Land Community College, 420 F.3d 712, 719 (7th Cir. 2005).

Plaintiff has no direct evidence–evidence that "will prove the particular fact in question without reliance upon inference or presumption"–such an admission by the City of a discriminatory motive.  See id. at 720 . Nor does Plaintiff have the circumstantial evidence–evidence that will allow a jury to infer intentional discrimination–necessary to proceed under the direct method.  There are no facts about suspicious timing or ambiguous statements to suggest that the City had a discriminatory motive; no facts indicating similarly situated white or non-Nigerian employees systematically received better treatment; and no facts showing that the City's reason why Plaintiff was passed over for a job or some other reward but a white or non-Nigerian person was not might be unworthy of belief.  See id. at 720-21 (describing three kinds of circumstantial evidence of intentional discrimination).

---

[1] Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1). See also Forrester v. White, 846 F.2d 29, 32 (7th Cir. 1988) ("Under Title VII, the petitioner must prove that she was discriminated against through disparate treatment based on an impermissible factor, or disparate impact of a neutral practice on a protected group.").

Plaintiff therefore must proceed under the indirect method. To establish a prima facie case of disparate treatment, Plaintiff must show that: (1) she belongs to a protected class; (2) her performance met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated others not in her protected class received more favorable treatment. Brummett v. Sinclair Broadcast Group, Inc., 414 F.3d 686, 692 (7th Cir. 2005). Assuming Plaintiff satisfies the first two elements, she cannot avoid summary judgment in Defendant's favor because she cannot satisfy the last two. Plaintiff has not pointed to adverse employment action she suffered. "For purposes of Title VII, an adverse employment action is a significant change in the claimant's employment status such as hiring, discharge, denial of promotion, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits." Rhodes v. Illinois Dept. of Transportation, 359 F.3d 498, 504 (7th Cir. 2004). No matter how disturbing the comments and gestures allegedly directed at Plaintiff, they did not change her employment status. Moreover, Plaintiff's allegation that she was denied an interview and promotion is the foundation of her retaliation counts (Counts II and III), not her disparate treatment Title VII count. As to the fourth element, there are no factual allegations about favorable treatment others received that would allow a jury to return a verdict in Plaintiff's favor. Because there is no triable issue as to whether Plaintiff suffered an adverse employment action or received less favorable treatment than similarly situated employees not in her protected class, Defendant is entitled to summary judgment on Plaintiff's disparate treatment count.

## 2. Hostile work environment

Plaintiff also seek to establish a violation Title VII by proving that Defendant subjected her to a hostile work environment. To do so, Plaintiff must prove (1) that she was subject to unwelcome harassment; (2) the harassment was based on her race or national origin; (3) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive working environment seriously affecting her psychological well-being (in other words, the harassment was severe or pervasive); and (4) **there is a basis for employer liability.** See Hrobowski v. Worthington Steel Co., 358 F.3d 473, 476 (7th Cir. 2004).

Defendant argues that, at best, Plaintiff has experienced relatively isolated instances of non-severe misconduct that will not support a hostile work environment claim, see Ngeunjuntr v. Metropolitan Life Insurance Company, 146 F.3d 464, 467 (7th Cir. 1998), and that Plaintiff cannot tie the alleged harassment to her race or national origin. It is clear, however, simply on the basis of Plaintiff's and Dr. Gaskill's deposition testimony that these issues are in dispute. A reasonable jury could believe Plaintiff was subject to unwelcome harassment, given her testimony about unfounded complaints of stealing, derogatory comments about blacks and Nigerians, intimations that she had the desire to harm her co-workers, efforts to undermine her authority, and efforts to ridicule her using a mop bucket and her computer. Defendant does not extinguish these facts with its own facts; it merely issues a blanket denial (in the Answer) and remarks that Plaintiff did not complain about each incident (in its Motion for Summary Judgment). A reasonable jury could also find that at least some of the harassment–the alleged comments about blacks and Nigerians, in particular–was based on Plaintiff's race and national origin. Finally, a reasonable jury could find on the facts presented here that the harassment

seriously affected Plaintiff's work performance and well-being. Plaintiff did, after all, visit the doctor complaining of workplace-induced burns and rashes that the doctor never found. Indeed, she continues to believe the burns and rashes existed. Moreover, the medical report Dr. Gaskill wrote on January 8, 2002–Plaintiff's first visit to him–notes that Plaintiff "appears fearful of her workplace." Def.'s Mem. in Support of Summary J., Ex. 3, Dep. Ex. 1. This is evidence (supplied by the Defendant no less) that Plaintiff must have found *something* at her workplace distressing or that she may simply be paranoid. It is a close call, but one for the jury.

The final issue, whether there is a basis for employer liability, Defendant's motion does not address. As explained in Hrobowski, 358 F.3d at 477:

> The standard for employer liability hinges on whether the harasser was the plaintiff's supervisor. Harassment by a supervisor of the plaintiff triggers strict liability, subject to the possibility of an affirmative defense where the plaintiff suffered no tangible employment action. Conversely, the employer may be found liable for a hostile work environment created by an employee who was not the plaintiff's supervisor only where the plaintiff proves that the employer has been negligent either in discovering or remedying the harassment.

See id. at 477. To create an issue of material fact as to whether a supervisor harassed her, Plaintiff must not only point to evidence that someone with managerial authority was abusive, she must also show that the harasser was her supervisor. See id. at 478. A supervisor is someone with the power to affect the terms of conditions of Plaintiff's employment. See id. Defendant's Answer admits that both Charles Bowling, who Plaintiff alleges loaded the crybaby program onto her computer, accused her stealing, and encouraged employees to complain about her, and Krystyna Markiewicz, who Plaintiff alleges made the bio-terrorism conference remark, supervised Plaintiff at various times. Plaintiff's deposition testimony also shows that Charles Bowling, as Chief Microbiologist, supervised Plaintiff beginning in 1998. Plaintiff, then, has

created an issue of material fact as to whether a supervisor harassed her. Because triable issues remain, Defendant is not entitled to summary judgment on Plaintiff's hostile work environment claim.

    **B.    Retaliation**

Plaintiff also alleges retaliation. "Under Title VII, unlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination." See Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003). The adverse employment action Plaintiff identifies is Defendant's failure to interview her and promote her to Director of Water Purification Laboratories.[2]

As with disparate treatment, Plaintiff may prove retaliation using the "direct method" or the "indirect method." Id. Plaintiff presents no direct evidence of discrimination (essentially, an employer's admission), see id. at 754, and no circumstantial evidence allowing the jury to infer intentional discrimination. With retaliation claims, there must be direct or circumstantial evidence that the "the person responsible for the contested decision" acted for a prohibited reason. Id. (internal citation omitted). Plaintiff has provided no circumstantial evidence that the decision-maker according to Defendant's affidavits–Commissioner Richard Rice and the man who advised him, John Spatz–were in any way responsible for denying her an interview and promotion. Indeed, all of Plaintiff's allegations aside from her general "policy and practice" allegation concern actors other than Commissioner Rice and John Spatz.

---

    [2] A denial of promotion constitute an adverse employment action for the purposes of Title VII. See Rhodes v. Illinois Dept. of Transportation, 359 F.3d 498, 504 (7th Cir. 2004).

Consequently, Plaintiff must prove retaliation under the indirect method. To do so:

> A plaintiff must show that after filing the [complaint of discrimination] only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner. If the defendant presents no evidence in response, the plaintiff is entitled to summary judgment. If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment. Otherwise there must be a trial.

Id. at 754-55 (citing Stone v. City of Indianapolis, 281 F.3d 640 (7th Cir. 2002)). Even if Plaintiff *could* point to a similarly-situated employee who did not file a charge (which she has not done and perhaps cannot do since the candidates who gained interviews were on the referral list and, as far as the record suggests, had job duties Plaintiff did not), Plaintiff could not prevail on this count. Defendant has presented evidence of a noninvidious reason for Plaintiff's failure to earn an interview: the absence of Plaintiff's name on the referral list due to both her late application and her failure, years earlier, to gain a promotion for lack of qualification. Plaintiff does not rebut this evidence. Defendant, therefore, is entitled to summary judgment on her retaliation count.

## C. Section 1983

To impose Section 1983 liability on the City, Plaintiff must show that (1) she suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, a widespread custom, or a deliberate act of a decision-maker with final policy-making authority for the City; (3) that was the proximate cause of her injury. See Ovadal v. City of Madison, 416 F.3d 531, 535 (7th Cir. 2005). Plaintiff does not allege that a municipal policy caused her injury (severe emotional and psychological harm). She alleges that a *custom* of encouraging white employees to engage in widespread discrimination, harassment, and retaliation against black employees did.

"An act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 403 (1997). Plaintiff's theory is that Defendant's custom of condoning discrimination by white employees is so widespread as to have the force of law. There is insufficient evidence in the record, however, for a reasonable jury to return a verdict for her on the issue. The Complaint alleges that "many other blacks" experienced discrimination and harassment but provides only examples involving Plaintiff. Likewise, Plaintiff testified that other black employees experienced "similar" treatment but declined to provide "specifc[s] of individual experiences." Def.'s Motion for Summary J., Ex. 1, p. 430. It is unclear from the excerpts provided whether Plaintiff declined because she had no such examples or because she felt the deposition was the improper venue for sharing them. Either way, her Section 1983 claim fails for lack of evidentiary support. See, e.g., Alexander v. City of South Bend, 433 F.3d 550, 558-59 (7th Cir. 2006).

The claim is not saved by the brief allegation in the Complaint that (a) three officers of the City who controlled the terms of Plaintiff's employment–Krystyna Markiewicz, Ellen Flanagan, and Charles Bowling–engaged in discrimination, harassment, and retaliation against her and that (b) one was a final policy/decisionmaker on matters affecting Plaintiff's employment. Plaintiff has provided no evidence to suggest that any of these three people are decision-makers with final policy-making authority for the City, as required by the standard outlined above. Rather, the evidence suggests that as mere supervisors at the Department of Water, they are not actors for whom the City would be liable under Section 1983. See Auriemma v. Rice, 957 F.2d 397, 399, 401 (7th Cir. 1992) (holding that municipal "policymakers" are those with the "authority to adopt rules for the conduct of government"). See also Brown, 520 U.S. 397 at 403 (municipalities are not liable solely because they employ a tortfeasor). Defendant is entitled to summary judgment on Plaintiff's Section 1983 claim.

### D. Section 1981

Plaintiff also alleges race discrimination, harassment, and retaliation in violation of Section 1981, which protects the right of all persons to make and enforce private contracts, "to sue, be parties, give evidence," to have "the full and equal benefit of all laws and proceedings," and to "be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind . . . ." 42 U.S.C. § 1981; Runyon v. McCrary, 427 U.S. 160, 168 (1976).

Section 1981 is evaluated under the same rubric as Title VII. See Williams v. Waste Management of Illinois, 361 F.3d 1021, 1028 (7th. Cir. 2004). To state a claim, Plaintiff must allege facts showing that: (1) Plaintiff is a member of a racial minority; (2) Defendant intended

to discriminate on the basis of race and national origin; and (3) the discrimination deprived Plaintiff of one or more rights enumerated in Section 1981. Black Agents & Brokers Agency, Inc. v. Near North Insurance Brokerage, Inc., 409 F.3d 833, 837 (7th Cir. 2005). It is undisputed that Plaintiff is a member of a racial minority. But for the reasons stated in the discussion of Plaintiff's Title VII disparate treatment claim, there are no facts showing that Defendant intended to discriminate against Plaintiff on the basis of race and national origin. See, e.g., Bio v. Federal Express Corporation, 424 F.3d 593, 596 (7th Cir. 2005) ("To prevail on his race discrimination claim under Title VII or § 1981, [the plaintiff] must either show direct evidence of discriminatory motive or intent or rely on the indirect burden-shifting method . . . ."). Because there is insufficient evidence for a reasonable jury to return a verdict on Plaintiff's Section 1981 claim, Defendant is entitled to summary judgment on that count.

### E. Equal Pay Act

To establish a prima facie case of wage discrimination under the Equal Pay Act, Plaintiff must show that (1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and that (3) the employees have similar working conditions. See Cullen v. Indiana University Board of Trustees, 338 F.3d 693, 698 (7th Cir. 2003). There are no facts before the Court that would satisfy the first prong, as Plaintiff admits that she does not have salary information. Nor has Plaintiff presented facts that would satisfy the second prong. To the contrary, she admits that for the relevant period, Charles Bowling's position was senior to hers and Alan Stark's job duties were dissimilar. Because

Plaintiff has not established a prima facie case, Defendant is entitled to summary judgment on her Equal Pay Act claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in part and denied in part. Defendant's motion is granted as to the disparate treatment claim in Count I and to Counts II, III, and IV in their entirety. Defendant's motion is denied as to the hostile work environment claim in Count I.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

**Dated: March 30, 2006**